UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GEORGE HUFFMAN,

Plaintiff(s),

v.

UNITED STATES OF AMERICA, et al.,

Defendant(s).

CASE NO. C25-5370-KKE

ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE

Plaintiff George Huffman sues the United States and the United States Postal Service ("USPS") (collectively, "Defendants") under the Federal Torts Claims Act for damages he sustained in a motor vehicle accident allegedly caused by the negligence of an employee of Defendants acting in the course and scope of her employment. Dkt. No. 1. Defendants now move to exclude Huffman's medical billing expert, Ms. Wendy Votroubek, arguing she is unqualified and that her opinions lack scientific rigor. Dkt. Nos. 18, 21. For the reasons discussed below, the Court DENIES Defendants' motion to exclude. Dkt. No. 18.

## I. BACKGROUND

Huffman brought this action against the United States and the USPS for damages arising from an October 7, 2022, motor vehicle accident. Dkt. No. 1 ¶¶ 13–26. Those damages include $149,065.91 in past medical treatment. Dkt. No. 20 at 1. Huffman intends to rely on the expert

report of his medical billing expert, Wendy Votroubek, at trial, who will testify about "the reasonableness of the cost of the treatment received by Plaintiff." Dkt. No. 19-1 at 7.

Ms. Votroubek's expert report details the methodology she followed to assess the reasonableness of Huffman's medical costs. She "reviewed the medical billings corresponding to the treatment received by Plaintiff after the subject motor vehicle collision." Dkt. No. 19-1 at 7. She then looked up the codes listed on medical bills, including (1) Current Procedural Terminology, or "CPT," which are "uniform "5-digit codes" that are "used by provider[s] for coding medical services and procedures," and (2) Healthcare Common Procedural Coding System, or "HCPCS," or which is a "standardized" "coding system used for equipment, drugs, and supplies not included in CPT codes." *Id.* at 12. Next, Ms. Votroubek consulted various databases to determine whether charges were "Usual, Customary and Reasonable" or "UCR." *Id.* These databases included Medical Fees PMIC books, which are published yearly and include CPT codes as well as "UCR fees at the 50%, 75% and 90%"; Findacode, which is an online database of both CPT and HCPS billing codes; and FairHealth, "an independent database of billed claims." *Id.* at 12–13. Ms. Votroubek based her "determination of the reasonableness/appropriateness of charges" "on the use of the UCR amounts at the 75% and 90%" level." *Id.* at 13. She explained her choice to use these percentiles as follows:

> While the 75% to 80% can be considered reasonable in amount, the 75% - 90% range represents the higher, albeit still acceptable end of what insurers consider fair payment for provided care. Using the 75% - 90% metrics for UCR can then accommodate providers that charge at the higher end of the UCR. Charges are then considered reasonable in amount when they can be captured between the 75% and 90% of UCR.
>
> *Id.*

Because the percentile fees used by these sources "are based on national fee data," and "medical fees vary substantially by geographical areas," Ms. Votroubek then applied a

geographical adjustment. Dkt. No. 19-1 at 14. Specifically, "Medical Fees has a Geographical Adjustment Factor or 'GAF,'" which is used "to best determine the specific location of medical practice." *Id.* at 13. Ms. Votroubek chose the GAF for "Rest of Washington" and adjusted the 75th and 90th percentile values by the GAF. *Id.*

If the sum of a provider's charges fell between the GAF-adjusted 75th and 90th percentiles, Ms. Votroubek deemed them "reasonable." Dkt. No. 19-1 at 14–15. If the sum of charges fell below that range, she deemed them "below reasonable." *Id.* And if the sum of charges fell above that range, she deemed them "above reasonable." *Id.* Applying this framework to Huffman's total charges of $145,011.95, Ms. Votroubek concluded they were "considered BELOW in amount"—i.e., below reasonable—where they "were below the 75% with GAF." *Id.* at 14. Specifically, "[t]he total of the charges at the 75% UCR with GAF in total were $152,207.46, [and] the charges at the 90% UCR with the GAF were $188,061.11." *Id.*

## II. DISCUSSION

### A. Legal Standard for Motions to Exclude

Federal Rule of Evidence 702 allows a "witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide opinion testimony based on "scientific, technical, or other specialized knowledge" if that knowledge will help the fact finder to "understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Courts liberally construe Rule 702 in favor of admissibility. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993).

"Before admitting expert testimony into evidence, the district court must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and 'reliable' under Rule 702." *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1188 (9th Cir. 2019) (quoting *Daubert*, 509 U.S. at 597). "The district court's gatekeeping function is less critical in a bench trial as judges

are less likely than jurors to be prejudiced by inadmissible expert opinions." *Hummel v. U.S. Bancorp*, No. C23-1915JLR, 2026 WL 237499, at *1 (W.D. Wash. Jan. 29, 2026); *see also Shore v. Mohave Cnty.*, 644 F.2d 1320, 1322–23 (9th Cir. 1981) ("Since this was a bench trial, there was little danger under the circumstances that the court would have been unduly impressed by the expert's testimony or opinion."). Thus, "[w]here a judge is the finder of fact, the evidentiary standards related to the admissibility and consideration of evidence are relaxed as the judge can more appropriately consider the objectionable evidence and it remains subject to exclusion or disregard." *Barshaw v. Pilgrim's Pride Co.*, No. C22-1673RSM, 2023 WL 4866357, at *1 (W.D. Wash. July 31, 2023) (citing *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir. 1994) (noting that "in a bench trial, the risk that a verdict will be affected unfairly and substantially by the admission of irrelevant evidence is far less than in a jury trial").

In considering the reliability of an expert's testimony, the Court weighs whether (1) "the testimony is based on sufficient facts or data[,]" (2) the expert uses reliable principles and methods, and (3) the expert reliably applied the principles and methods to the instant facts. Fed. R. Evid. 702. The Supreme Court outlined a non-exhaustive list of factors for deciding the reliability of scientific testimony, but these factors are not applicable to non-scientific testimony, which heavily depends on an expert's experience and knowledge versus methodology. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004).

**B. Analysis**

1. <u>Ms. Votroubek is qualified.</u>

Defendants first argue that Ms. Votroubek is not qualified to opine on the reasonable value of medical services where she has "never worked in the administration of a hospital or medical practice and has never worked in any billing, charging, or contracting department of any medical provider or payer," nor has she received "training, education, or experience evaluating the

reasonable value of medical services outside of the litigation consulting context." Dkt. No. 18 at 4. According to Defendants, Ms. Votroubek's only relevant experience is her "minimal training in how to be an expert witness coupled with experience testifying as an expert witness[.]" *Id.* And that experience is inadequate, Defendants contend, because experience developed as a professional expert witness is not sufficient to qualify as an expert. *Id.*

Rule 702 "contemplates a *broad conception* of expert qualifications"—thus, only a "minimal foundation of knowledge, skill, and experience" is required. *Hangarter*, 373 F.3d at 1015 (quoting *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994)). "A 'lack of particularized expertise goes to [the] weight of the testimony, not its admissibility.'" *Campos v. Big Fish Games*, No. C22-1806-RSM, 2025 WL 3140399, at *1 (W.D. Wash. Nov. 10, 2025) (quoting *United States v. Garcia*, 7 F.3d 885, 890 (9th Cir. 1993)).

The Court agrees with Defendants that generally, "experience developed as a professional expert witness" on its own is "not sufficient" for purposes of Rule 702. *See Matiella v. Murdock St. LLC*, No. 21-CV-2112 (GMH), 2025 WL 2298614, at *7 n.9 (D.D.C. Aug. 8, 2025) (quoting 29 Wright & Miller's Federal Practice and Procedure § 6264.1 (2d ed. 2025)). However, Ms. Votroubek's experience outside of her work as a professional expert witness renders her sufficiently qualified. Per her curriculum vitae, *see* Dkt. No. 19-1 at 19–39, Votroubek has been a nurse since 1976 and has experience reviewing medical bills and obtaining healthcare financing while working in the clinical setting. *Id.*; Dkt. No. 20 at 5. She has also "taken additional training as a legal nurse to determine the reasonableness of charges and future medical cost projections," including "the Reasonableness of Charges and Life Care Planning Training through FIG Services Nursing Education and Consultancy" as well as "additional training for both Reasonableness of Charges and Medical Cost Projections through AALNC (American Association of Legal Nurse Consultants)." Dkt. No. 19-1 at 10–11. And "[s]ince 2012, she has been the owner and principal

of Integrity Legal Nurse Consulting PDX," where "[s]he has provided opinions on the reasonableness of medical billings." Dkt. No. 20 at 5. Thus, the Court is persuaded that Ms. Votroubek's experience in the medical field, completion of training modules, and familiarity with medical billing provides a "minimal foundation" in her area of expertise. *See Hangarter*, 373 F.3d at 1015–16; *see, e.g.*, *Flores v. United States*, No. 221CV03608FWSMAA, 2023 WL 3341080, at *4 (C.D. Cal. Mar. 21, 2023) (finding medical billing expert was qualified based on his experience as a chiropractor and "nine years of experience" as a consultant at a billing and coding firm); *Simington v. Silver Spur MHP LLC*, No. CV-20-01789-PHX-ESW, 2022 WL 16550396, at *3 (D. Ariz. Oct. 31, 2022) (denying motion to exclude medical billing expert as unqualified, where expert was "a registered nurse, certified legal nurse consultant, and certified professional coder"); *Contreras v. Brown*, No. CV-17-08217-PHX-JAT, 2019 WL 2080143, at *3 (D. Ariz. May 10, 2019) (denying a motion to exclude a medical billing expert where the expert's general experience in the medical field, and familiarity with billing practices nationally, provided sufficient foundation in her area of expertise).

Defendants levy a series of challenges to the adequacy of Ms. Votroubek's experience. Dkt No. 22 at 3–4 (citing Ms. Votroubek's deposition testimony).[1] For example, they question the

[1] Defendants primarily rely on *Frushtick v. FeroExpress Inc.*, No. 1:18-CV-2891-MLB, 2022 WL 824239, at *4 (N.D. Ga. Mar. 18, 2022), where the court granted the motion to exclude because there was "no evidence showing [the expert] billed anyone based on the kind of valuation methodology she employs here," and that although the expert had "replicated her methodology while working as a medical billing expert in other litigation," "experience developed as a professional expert witness is not sufficient" to qualify as an expert. *Id.* (quoting 29 Wright & Miller's Federal Practice & Procedure § 6264.1 (2d ed. Apr. 2021)). But *Frushtick* relied heavily on a "strikingly similar" Eleventh Circuit case which held that a professional coder was not qualified to testify about the reasonableness of charges for medical services. *Id.* (discussing *Castellanos v. Target Corp.*, 568 F. App'x 886 (11th Cir. 2014) (per curiam)). Here, Defendants have not pointed to any similar Ninth Circuit case, and other district courts have declined to follow the reasoning in *Frushtick* or otherwise denied motions to exclude medical billing experts with comparable experience to Ms. Votroubek. *See, e.g.*, *Garvin v. TransAm Trucking, Inc.*, No. CV422-062, 2024 WL 1998515, at *11–12 (S.D. Ga. May 6, 2024) (declining to exclude defendant's expert as unqualified, despite plaintiff "compar[ing] [her] to the expert in *Frushtick*"); *Barwick v. United States*, No. 1:21-CV-144 (LAG), 2023 WL 12204540, at *6 (M.D. Ga. Aug. 1, 2023) (distinguishing *Frushtick*); *Flores*, 2023 WL 3341080, at *4; *Simington*, 2022 WL 16550396, at *3.

sufficiency of Ms. Votroubek's professional training and the relevance of her experience reviewing medical bills in Arizona where this case involves Washington medical bills. *Id.* But these arguments all bear on the weight of Ms. Votroubek's testimony, not its admissibility. *See Contreras*, 2019 WL 2080143, at *3 (declining to exclude medical billing expert where "her lack of particularized expertise regarding Arizona and Nevada 'goes to the weight of [her] testimony, not its admissibility'" (citation omitted)). While Defendants are free to attack these purported inadequacies on cross-examination, they do not necessitate exclusion of Ms. Votroubek's testimony at this stage.

In sum, the Court finds Ms. Votroubek's experience described above, in addition to her experience as a professional expert witness—including the fact that she "has testified at least 58 times and her testimony has never been excluded or limited" (Dkt. No. 20 at 5)—is sufficient to qualify her as an expert who can opine on the reasonableness of Huffman's medical bills. *See generally Slovak v. Golf Course Villas Homeowners' Ass'n*, No. 313CV00569MMDCLB, 2021 WL 6693814, at *14 (D. Nev. Dec. 3, 2021) (denying motion to exclude and noting that expert "ha[d] testified in state and federal court as an expert witness and has never been excluded as an expert"); *Wilson v. City of St. Petersburg*, No. 8:19-CV-1868-T-60SPF, 2020 WL 8613257, at *2 (M.D. Fla. Dec. 23, 2020) (noting that expert "ha[d] been qualified as an expert more than thirty times in her career, has testified as an expert in fourteen trials and sixty depositions since 2012, and has never been deemed unqualified").[2]

---

[2] Defendants also challenge Ms. Votroubek's declaration (Dkt. No. 21) submitted alongside Huffman's response to Defendant's motion to exclude, arguing it is "untimely," where "[t]he Court's deadline to disclose expert reports in this case was May 4, 2026." Dkt. No. 22 at 3 (citing Dkt. No. 15). Because the Court did not consider or rely on Ms. Votroubek's later-filed declaration in resolving Defendant's motion to exclude, it does not address these arguments.

2. Ms. Votroubek's Methodology is Reliable

Defendants next challenge Ms. Votroubek's methodology and identify "three fundamental flaws that render it unreliable and inadmissible." Dkt. No. 18 at 5. The Court addresses each in turn, bearing in mind that "the evidentiary standards related to the admissibility and consideration of evidence are relaxed" given that this case will proceed as a bench trial. *See Barshaw*, 2023 WL 4866357, at *1.

a. *Whether Huffman's medical bills correspond to the actual medical services he received*

First, Defendants note that Ms. Votroubek never "determine[d] whether the codes and charges on Plaintiff's medical bills correspond to the *actual medical services he received*." Dkt. No. 18 at 5. Under Washington law, "[a] plaintiff in a negligence case may recover only the reasonable value of medical services received, not the total of all bills paid." *Aldan v. Home Depot USA Inc.*, No. 3:20-cv-05694-TL, 2022 WL 17740315, at *3 (W.D. Wash. Dec. 16, 2022) (quoting *Patterson v. Horton*, 929 P.2d 1125, 1130 (Wash. Ct. App. 1997)). Thus, according to Defendants, "[b]y omitting any step to determine whether Plaintiff actually *received* the services listed on the bills, Votroubek's analysis cannot be used to determine the 'reasonable value of medical services *received*.'" Dkt. No. 18 at 5.

Huffman responds that "[e]vidence as to what treatment was actually provided and reflected in the billing statements will be presented by other witnesses, including Plaintiff's treating health care providers, and by the face of the bills and corresponding treatment records." Dkt. No. 20 at 6. This does not solve the problem, according to Defendants, because Huffman had not disclosed that these treating providers would testify to the accuracy of his medical bills. Dkt. No. 22 at 6. And even if Huffman had disclosed this information, Defendants also argue that

"courts have held treating providers cannot testify regarding their bills without a written report." *Id.*[3]

Neither of Defendants' arguments is persuasive. As an initial matter, they both bear on the scope of the treating providers' testimony, not Ms. Votroubek's. The Court understands that Defendants made this argument on reply in response to Huffman's position that "[e]vidence as to what treatment was actually provided" will be presented by other witnesses and evidence. Dkt. No. 20 at 6. Even so, Defendants did not move to exclude, limit, or otherwise challenge any of Huffman's treating providers, and the scope of their testimony is not currently before the Court.

Moreover, Defendants' assertion that Huffman's expert disclosures did not identify that the treating providers would testify as to the medical bills is misleading. Dkt. No. 22 at 5 (arguing that Huffman's expert disclosures only stated that treating physicians would testify about "their observations, diagnoses, treatment, and prognoses for Mr. Huffman" (quoting Dkt. No. 19-1 at 2)). In full, Huffman's expert disclosure states as follows:

> Plaintiff will call the following treating health care providers, previously identified in discovery. The medical records of the listed providers have been produced. Each witness will provide testimony concerning their observations, diagnoses, treatment, and prognoses for Mr. Huffman, as set forth in their records. Without limitation, the listed treating healthcare providers will testify that Plaintiff sustained the following injuries as a direct and proximate result of the subject motor vehicle collision, *that the treatment rendered to address the injuries was reasonable and necessary, and the amounts charged for the treatment provided was reasonable*[.]
>
> Dkt. No. 19-1 at 2 (emphasis added).

Thus, Huffman's disclosures as to the treating providers appear to contemplate that they will testify about the costs associated with the treatment provided. Furthermore, Defendants fail to provide

[3] "[T]reating physicians are not required to submit written reports under Federal Rule of Civil Procedure 26(a)(2)(B) as long as their opinions 'were formed during the course of treatment.'" *Sagdai v. Travelers Home & Marine Ins. Co.*, 639 F. Supp. 3d 1091, 1102 (W.D. Wash. 2022) (quoting *Goodman v. Staples The Off. Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011)). "To the extent that the expert intends 'to render expert testimony beyond the scope of the treatment rendered,' however, the expert must provide a written expert report." *Penny v. State Farm Mut. Auto. Ins. Co.*, No. 18-cv-5195-JLR, 2020 WL 5743037 (W.D. Wash. Sept. 25, 2020) (quoting *Goodman*, 644 F.3d at 826).

authority from this district or Circuit supporting their proposition that treating providers cannot testify about their medical bills without a written expert report. To the contrary, as this Court stated in *Aldan*, "[treating] providers likely meet the standard as potential expert witnesses regarding the cost of any treatment they provided" where, as here, the party "disclose[s] the treating physician's intent to provide cost-related opinion testimony." 2022 WL 17740315, at *3.

The Court reiterates that the scope of Huffman's treating providers' testimony is not currently presented for resolution. As a general matter, treating physicians "may testify as percipient witnesses concerning their diagnosis and treatment of [the patient] and any opinions formed during that course of treatment." *Lister v. Hyatt Corp.*, No. C18-0961JLR, 2019 WL 6701407, at *13 (W.D. Wash. Dec. 9, 2019); *see also Goodman*, 644 F.3d at 826. If at trial, Huffman's treating providers attempt to introduce opinions that were not developed during the course of treatment or properly disclosed, Defendants may object, and the Court will consider appropriate action at that time. *See generally Platt v. Holland Am. Line Inc.*, No. 2:20-CV-00062-JHC, 2023 WL 2928348, at *4 (W.D. Wash. Apr. 13, 2023).

Finally, in addition to the testimony of the treating physicians, Huffman intends to rely on "the face of the bills and corresponding treatment record" as "[e]vidence as to what treatment was actually provided." Dkt. No. 20 at 6. Defendants do not respond to this point, nor do they otherwise dispute that "[m]edical bills may be offered as proof of actual past medical expenses." *Aldan*, 2022 WL 17740315, at *3. Thus, the Court is not convinced that Huffman's "evidence is missing an indispensable link between [Ms.] Votroubek's testimony and the medical care he received" (Dkt No. 22 at 6) such that Ms. Votroubek's testimony should be excluded on this basis.

b. *Whether Ms. Votroubek's valuation methodology is reliable*

Defendants next challenge Ms. Votroubek's reliance on data from various medical databases, including PMIC and FairHealth. According to Defendants, Ms. Votroubek's

methodology is a "black box" where she "does not know how the data in th[ese] database[s] is calculated," "only that it is 'based on over 600 million actual charges from public and private databases and using a proprietary formula and estimates fees for providers.'" Dkt. No. 18 at 6 (quoting Dkt. No. 19-1 at 3 n.6). In response, Huffman contends that Defendant's criticism of the databases as "proprietary goes to its weight, not admissibility." Dkt. No. 20 at 8.

Courts across the country are split on whether the methodology employed by Ms. Votroubek is sufficiently reliable. *Compare Elsasser v. Devon Energy Prod. Co., L.P.*, No. 21-CV-0182, 2023 WL 4490401, at *3 (D. Wyo. Feb. 3, 2023) ("Defendant has failed to show by a preponderance of evidence that the [FairHealth] database is a suitable basis to find [the expert]'s opinions are relevant and reliable."); *Manuel v. Protective Ins. Co.*, No. CV 22-3194, 2023 WL 7170385, at *2 (E.D. La. Oct. 31, 2023) (concluding that FairHealth data was not "reliable for *Daubert* purposes"), *with MedARC, LLC v. Scott & White Health Plan*, 618 F. Supp. 3d 365, 374 (N.D. Tex. 2022) (finding "anticipated expert testimony [wa]s sufficiently reliable" where expert "review[ed] the patients' medical records, and then compar[ed] the amount charged with the FAIR Health rates to determine whether the amounts charged were usual and customary"); *Thompson v. Intermodal Cartage Co., LLC*, No. 2:24-CV-34-KS-MTP, 2025 WL 1431443, at *6 (S.D. Miss. May 19, 2025) (declining to exclude expert opinion where expert "consulted multiple pricing databases including Physician's Fee Reference, PMIC Medical Fees, Find-a-Code, and the American Hospital Directory, and then applied a geographic adjustment factor for the location where the services were provided and ultimately arrived at her opinion as to the reasonable value of the medical services rendered").

Numerous courts in this Circuit have rejected reliability challenges to methodologies similar to Ms. Votroubek's. *See, e.g.*, *Flores v. United States*, No. 221CV03608FWSMAA, 2023 WL 3341080, at *4 (C.D. Cal. Mar. 21, 2023) (finding expert's methodology, which relied on "the

95th percentile figure reported for a particular medical service in billing databases to determine the reasonable value of that medical service" to be "sufficiently reliable"); *Salazar v. Flores*, No. CV-16-08201-PCT-SPL, 2019 WL 4222384, at *6 (D. Ariz. Sept. 5, 2019) (concluding that expert's methodology of "comparing a sample of the Plaintiff's medical bills to the data generated by the MCMC database, while accounting for geographical location" was "reliable"); *Calhoun v. Standard Parking Plus Corp.*, No. CV-24-01771-PHX-MBM, 2026 WL 2948736, at *2 (D. Ariz. Sept. 30, 2026) ("[T]he Court finds that Moran's opinions are based on sufficient data and that he, like other experts, can reasonably rely on the Fair Health database."); *Contreras*, 2019 WL 2080143, at *4 (similar); *but see Encarnacion v. J.B. Hunt Transp. Inc.*, No. CV-24-01384-PHX-MTL, 2026 WL 83996, at *11 (D. Ariz. Jan. 12, 2026) (excluding expert opinion on reasonable value of medical services as unreliable when based on a proprietary database with "opaque data selection").

On balance, and bearing in mind that "in most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility," the Court declines to exclude Ms. Votroubek's testimony based on her use of these databases. *See Gonzalez v. Wal-Mart Stores E., LP*, No. 8:21-CV-02077-KKM-JSS, 2024 WL 3505402, at *4 (M.D. Fla. Feb. 20, 2024). As one court explained, "it is irrelevant that [the expert] does not personally know how to compute the values in the databases if experts in [the] field would rely on that data." *Id.* And here, "[i]t is well established that medical coding and billing experts routinely rely upon the databases identified by Ms. [Votroubek]." *Jones v. Burch*, No. 8:24-CV-00072-JLB-SPF, 2026 WL 1067087, at *4 (M.D. Fla. Apr. 20, 2026). The PMIC Medical Fees Database is a "nationally recognized source[] to determine the reasonable value of [medical] charges." *Thompson, LLC*, 2025 WL 1431443, at *6. Similarly, the FairHealth Database "is an 'industry publication[ ] that [is] commonly relied upon by medical professionals,

insurance companies, and others involved in the medical industry to keep up to date with recent trends in fees charged for medical services.'" *Garvin*, 2024 WL 1998515, at *12 (citation omitted). Thus, Ms. Votroubek reasonably relied on these databases.

The Court is also not convinced by Defendants' argument that Ms. Votroubek's methodology cannot be tested. Dkt. No. 22 at 8. "[A]ny medical coding or billing expert with access to PMIC [and FairHealth], … would be able to retrace Ms. [Votroubek]'s steps and determine whether they would reach the same conclusions." *Jones*, 2026 WL 1067087, at *4; *see also Gonzalez*, 2024 WL 3505402, at *5 (finding that a medical coding and billing expert's methodology was sufficient because it "appear[ed] to be replicable, the primary requirement of the 'testability' factor" (citation omitted)). Here, Defendants had the opportunity to procure their own medical billing expert who would have been able to replicate Ms. Votroubek's methodology and assess whether they would reach the same conclusions. Defendants' decision not to do so does not render Ms. Votroubek's testimony untestable or unreliable.

In sum, Defendants' challenges to Ms. Votroubek's reliance on these databases go to the bases and sources of her opinion and affect the weight of the evidence rather than its admissibility. *See Garvin*, 2024 WL 1998515, at *10 (denying motion to exclude, finding that expert's "reliance" on the FairHealth database did not render her opinion unreliable and "any perceived deficiencies with the methods and bases of [her] testimony, … may be raised through vigorous cross-examination at trial"); *see also Dean v. Cherokee Ins. Co.*, No. 1:18-CV-04914-WMR, 2021 WL 9315270, at *5 (N.D. Ga. Mar. 22, 2021) (similar).

c. *Whether Ms. Votroubek's determination of reasonable value is reliable*

Finally, Defendants argue that Ms. Votroubek's opinion is unreliable "because it turns on her arbitrary assertion that the range of reasonable values for medical services is equal to the 75th to 90th percentile values in the proprietary databases she uses." Dkt. No. 18 at 8. Courts within

this Circuit have rejected similar arguments challenging an expert's choice of percentile benchmark. In *Flores*, for example, the court rejected the defendant's challenge to plaintiff's expert's reliance "on the 95th percentile figure reported for a particular medical service in billing databases to determine the reasonable value of that medical service," explaining that the expert's "methodology [was] sufficiently reliable for his testimony on those matters to be presented to the finder of fact" such that "this dispute goes to the weight and credibility of" the expert's testimony at trial. 2023 WL 3341080, at *4. And in *Calhoun*, the court "agree[d] that [the expert]'s 80th percentile method is sufficiently reliable and that any critique of [the expert]'s benchmarking methodology goes to the weight, not admissibility, of his testimony." 2026 WL 2948736, at *3. *See also McGraw v. Cobra Trucking, Inc.*, 569 F. Supp. 3d 1089, 1101 (D. Colo. 2021) (finding opinions based on 80th percentile method to be "sufficiently reliable to avoid preclusion at this juncture" and any "criticisms go to the weight, not admissibility, of [the expert's] opinions"). As one court put it, the expert "could have used any percentile that she saw fit, and Plaintiff would be free to inquire into her choice of percentile upon cross-examination." *Dean*, 2021 WL 9315270, at *7. The Court agrees with these decisions and declines to exclude Ms. Votroubek's testimony on this basis. Any perceived weakness regarding Ms. Votroubek's use of the 75th to 90th percentile values can be adequately addressed through cross-examination.

## III. CONCLUSION

For the reasons stated above, the Court finds Ms. Votroubek is qualified to opine on the reasonableness of Huffman's medical bills and that her methodology is sufficiently reliable. Accordingly, Defendants' motion to exclude her testimony (Dkt. No. 18) is DENIED.

Dated this 16th day of October, 2026.

Kymberly K Evanson

Kymberly K. Evanson
United States District Judge